IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| GLEN FLETCHER, | ) | |
|---|---|---|
| JONATHAN HARPER | ) | |
| MALCOLM MOON, | ) | |
| JOSEPH ROBINSON, and | ) | |
| WILLIAM ROBERTSON, JR. | ) | |
| | ) | |
| *Plaintiffs,* | ) | |
| | ) | |
| | ) | CASE NO. _____ |
| v. | ) | |
| | ) | |
| USA GLOBAL LOGISTICS, LLC and | ) | |
| PREZLEIGH TRUCKING, INC., | ) | **JURY DEMANDED** |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

## COMPLAINT

Come Plaintiffs Glen Fletcher, Jonathan Harper, Malcolm Moon, Joseph Robinson, and William Robertson, Jr., by and through counsel, and, for their Complaint against Defendants USA Global Logistics, LLC and Prezleigh Trucking, Inc., state as follows:

### Summary of the Action

1. Plaintiffs were employed by Defendants in a position variously referred to in industry as a "switcher," "hostler," "spotter" or "yard jockey." This position is not exempt under the Motor Carrier's Act exemption or any other exemption to the Fair Labor Standards Act.[1] However, Defendants, who had a contract to perform "spotting" services at the Gap distribution facility in Gallatin, Tennessee, employed Plaintiffs to perform this work, which consisted of moving (exclusively within the private property of the Gap facility) trailers brought to the Gap

---

[1] See 29 C.R. § 782.3 ("so-called 'hostlers' who 'spot' trucks and trailers at a terminal dock for loading and unloading are not exempt as drivers merely because as an incident of such duties they drive the trucks and tractors in and about the premises of the trucking terminal"); *see also Gordon's Transports v. Walling*, 162 F.2d 203 (6th Cir. 1947).

facility by truck drivers. Plaintiffs would move the trailer from a staging area to a loading bay, and then later from the bay back to the staging area; however, Plaintiffs never drove on any public road and, indeed, the vehicle used for the "spotting" was not even registered or plated for use on public roads. Further, Plaintiff did not load or unload the trailers. Defendants required Plaintiffs to work overtime in this position, knowing it was non-exempt, but did not pay Plaintiffs overtime compensation, in violation of the Fair Labor Standards Act.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the claims of Plaintiff and those similarly situated pursuant to 28 U.S.C. §§ 1331 and 1337 and 29 U.S.C. § 216(b).

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant conducted business within the District and employed Plaintiffs at the Gap facility in Gallatin, Sumner County, Tennessee, within the District of this Court.

## PARTIES

4. Plaintiffs were employed by Defendants performing work that was not exempt from the requirements of the FLSA.

5. Pursuant to 29 U.S.C. § 216(b), each Plaintiff has consented in writing to serving as a Plaintiff in this action, and Plaintiffs' consents are attached hereto as Exhibits 1 through 5.

6. Defendant USA Global Logistics LLC (hereafter, "USA Global") is an Illinois for-profit limited liability company which has a principal place of business at 255 Madsen Dr., Bloomingdale, IL 60108, and may be served by service of process (A) on its President, James Gineris, (B) on its registered-with-the-Illinois-Secretary-of-State registered agent, David Schlueter, at 401 W. Irving Park Rd., Itasca, IL 60106 or (C) upon information and belief, by service upon the Tennessee Secretary of State, Defendant having failed to register a registered an

agent with the Tennessee Secretary of State despite doing business in the State of Tennessee, including serving as the joint employer of Plaintiffs at the Gap distribution facility in Gallatin, Tennessee as described more fully below.

7. Defendant Prezleigh Trucking, Inc. (hereafter, "Prezleigh") is a New Mexico for-profit corporation which has a principal place of business at 9037 Freeman Oaks Cv., Cordova, TN 38018, and may be served by service of process on its registered-with-the-Tennessee-Secretary-of-State registered agent, Charles Burton, at 9037 Freeman Oaks Cv., Cordova, TN 38018.

8. Each Defendant's annual sales have, at all relevant times to this Complaint, exceeded $500,000.00.

9. Defendant is an enterprise engaged in commerce or in the production of goods for commerce, as defined in 29 U.S.C. § 203.

## Factual Allegations

10. The Gap distributing facility in Gallatin, Tennessee is a facility which distributes clothing to Gap stores.

11. The Gap facility contracts with other companies to perform "spotting" services, as discussed in more detail below, at the Gallatin Gap facility.

12. This contract was previously with a different company; however, in approximately April, 2021, Defendant USA Global obtained the contract to perform "spotting" services at the Gallatin Gap facility.

13. Upon information and belief, Defendant USA Global contracted with Defendant Prezleigh for Prezleigh to be the local employer of Plaintiffs.

14. Plaintiffs' paystubs reflect payment from Prezleigh to Plaintiffs and, upon information and belief, Prezleigh has held itself out to the government as Plaintiffs' employer.

15. However, Plaintiffs were hired by Defendant USA Global and supervised by Defendant USA Global; Defendant USA Global controlled Plaintiffs' work and directed that Plaintiffs work overtime but not be paid overtime compensation.

16. Accordingly, Defendant USA Global is a joint employer of Plaintiffs together with Prezleigh, and jointly liable to Plaintiffs for the deprivations of Plaintiffs' rights under the Fair Labor Standards Act to overtime compensation for their overtime work..

17. Each Plaintiff has worked for Defendants solely as a "spotter" at the Gap facility since approximately April, 2021.

18. The work of "spotter" is a separate position from the position of over-the-road truck driver described below; Plaintiffs did not perform the work of an over-the-road truck driver and, indeed, did not ever throughout their employment with Defendants drive or otherwise work on any public road or anywhere other than on the private property of the Gap facility.

19. Each Plaintiff was assured by Defendants that he would not be called upon to perform any work other than as a "spotter" on the premises of the Gap facility; for instance, each Plaintiff would never be called upon to work as an over-the-road truck driver for Defendants (or either of Defendants).

20. Indeed, none of the Plaintiffs have commercial driver's licenses or federal "medical cards" required by federal law of drivers of commercial motor vehicles driving in interstate commerce, and, accordingly, both Plaintiffs and Defendants would be legally prohibited from having Plaintiffs drive in interstate commerce.

21. The work of "spotter" and the "spotting" services Defendants provide at the Gap facility consist of moving trailers around the property of the Gap facility.

22. Specifically, over-the-road truck drivers (again, not Plaintiffs) deliver trailers to the Gap facility from other locations, leaving the trailers in a staging area on the private property of the Gap facility.

23. After the over-the-road truck drivers disconnect the trailer and leave the trailer, Plaintiffs, using a vehicle specifically designed for "spotting," (a TICA Pro-Spotter) move the trailer either from the staging area to a dock of the Gap facility or to another area of the Gap facility to be stored until the trailer is ready to be loaded/unloaded at a dock of the Gap facility; after the trailer is loaded/unloaded at the Gap facility, Plaintiffs then move the trailer back to the staging area where an over-the-road truck driver (not Plaintiffs) will pick up the trailer and take it to its ultimate destination.

24. Throughout the entire course of Plaintiffs' work, Plaintiffs never move any trailer (or drive any vehicle upon) on any public road; the Gap facility is configured so that all of the movements of the trailer (from staging area to waiting area or dock and back) are all done entirely on the private property of the Gap facility.

25. Stated another way, once a trailer is delivered to the Gap facility by an over-the-road truck driver, the trailer always stays on the Gap facility property throughout the time Plaintiffs are "spotting" the trailer within the Gap facility until after Plaintiffs are done with their "spotting" work relating to the trailer, after which the trailer is removed by an over-the-road truck driver.

26. Plaintiffs do not perform any work loading or unloading the trailers; instead, this work is done by employees of the Gap facility.

27. Upon information, in addition to not being actually used on any public road or highway, the vehicles Plaintiffs use are not licensed, plated, or insured for use on any public road or highway.

28. Each Plaintiff worked more than forty hours in one or more workweeks; in most weeks Plaintiffs were performing substantial overtime work of as much as seventy hours per week.

29. This was in contrast to the previous company that had the Gallatin, Tennessee Gap facility contract; that company employed more "spotters" but had each employee work less hours per week.

30. Neither the Motor Carrier's Act exemption to the Fair Labor Standards Act nor any other exemption to the Fair Labor Standards Act applies to the work of Plaintiffs.

31. Therefore, Defendants were required to pay Plaintiffs overtime compensation for their overtime work at the Gallatin Gap facility.

32. However, Defendants did not pay Plaintiffs overtime compensation for their overtime work (work in excess of forty hours in the workweek) at the Gallatin Gap facility.

33. Instead, Defendants paid Plaintiffs the same rate of hourly pay for Plaintiffs' overtime work as Defendants paid Plaintiffs for their non-overtime work.

34. For example, a copy of paystubs to Plaintiff Joseph Robinson are attached hereto as Exhibits 6 and 7.

35. Plaintiff Robinson was credited by Defendants with working 69 hours during the 7-day (one-week) period from April 26, 2021 to May 2, 2021.

36. For these 69 hours, Defendants paid Plaintiff Robinson $18.00 per hour for each hour Plaintiff Robinson worked (including both the first forty hours worked in the workweek and the hours worked in excess of forty in the workweek).

37. Plaintiff Robinson was credited by Defendants with working 51 hours during the 7-day (one-week) period from May 31, 2021 to June 6, 2021.

38. For these 51 hours, Defendants paid Plaintiff Robinson $19.00 per hour for each hour Plaintiff Robinson worked (including both the first forty hours worked in the workweek and the hours worked in excess of forty in the workweek).

39. Plaintiff Glen Fletcher was previously employed prior to and during January 2021 by USA Global performing "spotting" services at the Gap distribution center in Fresno, California.

40. Plaintiff Fletcher's work for USA Global performing "spotting" services at the Gap distribution center in Fresno, California was essentially the same as Plaintiffs' work for Defendants performing "spotting" services at the Gap distribution center in Gallatin, Tennessee.

41. Plaintiff Fletcher worked overtime prior to and during January, 2021 for USA Global at the Fresno, California Gap distributing center, and was paid overtime for that work, which was essentially identical to Plaintiffs' work for Defendants at the Gallatin, Tennessee Gap distributing center; however, USA Global's manager over "spotting" contracts, Frank Rodriguez, told Plaintiff Fletcher that USA Global would not pay overtime for overtime work at the Gallatin, Tennessee Gap facility like it did at the Fresno, California Gap facility.

42. Upon information and belief, USA Global continues to employ "spotters" at the Fresno, California Gap facility, to work those "spotters" in positions essentially identical to the work of Plaintiffs at the Gallatin, Tennessee Gap facility, and to pay those "spotters" overtime compensation for those spotters' overtime work.

# COUNT I

## VIOLATION OF FLSA
## NONPAYMENT OF OVERTIME COMPENSATION

43. Plaintiff incorporates by reference all preceding paragraphs as if the same were set forth again fully at this point.

44. Defendant is subject to the wage requirements of the FLSA because Defendant is an "employer" under 29 U.S.C. § 203(d).

45. During all relevant times, Plaintiffs were covered employees entitled to the above-described FLSA's protections. *See* 29 U.S.C. § 203(e).

46. The FLSA requires that covered employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1½) times the regular rate at which he is employed. See 29 U.S.C. § 207(a)(1).

47. Plaintiffs and their work for Defendants were not exempt from the requirements of the FLSA.

48. Plaintiffs are entitled to be paid overtime compensation for all hours worked over forty (40) in a workweek pursuant to 29 U.S.C. § 207(a)(1) and 29 C.F.R. § 778.112.

49. Defendant knowingly failed to compensate Plaintiffs at a rate of one and one-half (1½) times their regular hourly wage for hours worked in excess of forty (40) hours per week, in violation of 29 U.S.C. § 207(a)(1) and 29 C.F.R. § 778.112.

50. Defendant has willfully violated the FLSA by engaging in a pattern or practice (or patterns or practices) of failing to pay employees overtime compensation earned.

51. Pursuant to 29 U.S.C. § 216(b), employers, such as Defendant, who fail to pay an employee wages in conformance with the FLSA shall be liable to the employee for the unpaid

minimum and overtime wages, an additional equal amount as liquidated damages, reasonable attorney's fees, and costs of the action.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays that the Court:

A. Issue process and bring Defendants before the Court;

B. Empanel a jury for the trial of all issues of fact;

C. Enter a judgment awarding Plaintiffs damages in the amount of the unpaid overtime compensation, plus liquidated damages in a like amount, in amounts to be proven at trial;

D. Award Plaintiffs all costs of litigation, including expert fees and attorneys' fees;

E. Grant Plaintiffs such other further and/or general, legal and/or equitable relief to which they are entitled or which the Court otherwise deems appropriate.

Respectfully submitted,

/s/ Mark N. Foster
Mark N. Foster
Law Office of Mark N. Foster, PLLC
P.O. Box 869
Madisonville, KY 42431
(270) 213-1303
Mfoster@MarkNFoster.com
*Counsel for Plaintiffs*